Williams v. The Niagara Fire Ins. Co.

---

## WILLIAMS v. THE NIAGARA FIRE INS. Co.

1. **Pleading: REPLY.** The plaintiff may file a reply later than noon of the day succeeding that on which the answer is filed, upon reasonable terms to be imposed by the court.

2. **Practice: CONTINUANCE.** The granting of a continuance for the reason that the reply, which was not filed until the trial term, presented a new issue, rested within the discretion of the court, and an abuse of discretion would alone justify interference with his action.

3. **Insurance: CERTIFICATE: NEAREST MAGISTRATE.** A provision in a policy requiring that the certificate accompanying the proofs of loss should be given by the nearest magistrate, should receive a reasonable rather than a literal construction.

4. ———: UNOCCUPIED BUILDING: ESTOPPEL.  Notwithstanding the policy provided that if the premises became unoccupied during the life of the policy, without the written consent of the company indorsed thereon, the policy should be void, it was *held* that, where an agent insured an unoccupied building, and received the premium therefor, the company was estopped from denying that the policy had a legal existence.

5. ———: AGENCY.  The policy not being delivered at the time it was written up, but subsequently handed to a messenger of the insured, the acts and declarations of such messenger would not be binding upon the insured without proof of his authority.

6. ———: PAROL CONDITION: BURDEN OF PROOF.  The validity of the policy being determined, and defendant alleging that the premises were to have been occupied before the date on which the property was destroyed, it had the burden to establish that fact.

7. ———: EXPERT EVIDENCE.  Expert evidence is not admissible to show the manner of adjustment of losses by insurance companies.

*Appeal from Lee District Court.*

WEDNESDAY, APRIL 23.

ACTION on a policy of insurance against loss or damage by fire.  The policy was dated October 18, 1876, and insured the property for one year.  The loss occurred on the 4th or 5th day of November, 1876.  There was a trial by jury, judgment for plaintiff, and defendant appeals.

*McCrary, Hagerman & McCrary*, for appellant.

*Gillmore & Anderson* and *Craig & Collier*, for appellee.

SEEVERS, J.—I.  The petition was filed in January, 1877, and the defendant required to plead thereto on April 3, 1877.

1. PLEADING: reply.

The answer was, in fact, filed on April 5th.  The replication was not filed until December 13, 1877. On the same day a motion was filed to strike the reply, because—*First*, it was not filed within the time required by law; *second*, because of the delay between the filing of the answer and reply; and, *third*, it was filed without leave of the court.  This motion was overruled, and the ruling is assigned as error.

Williams v. The Niagara Fire Ins. Co.

Strictly, the reply should have been filed before noon of the day succeeding that on which the answer was filed. Code, § 2636. The statute, however, fails to provide any penalty for the failure to file the reply at that time, other than that the material allegations of the answer shall be deemed true. Code, § 2712. Until a reply was filed the defendant had the right to act on the supposition the answer was to be taken as true. Without doubt the defendant could have invoked the action of the court and had the issue settled at a much earlier day, if it had been deemed advisable to have the same done. But no such action was taken, and, if not a matter of right, it was clearly within the discretion of the court to permit the reply to be filed at the time it was. When the court overruled the motion it in effect granted leave to file. There was no necessity of going through the form of striking the reply because not filed in time, and then granting such leave; or, to say the least, it was within the discretion of the court to do so or not.

To prevent any possible misapprehension we incline to think the plaintiff had the absolute right to file the reply upon such reasonable terms as the court might see fit, and could properly, under the circumstances, impose.

II. Because of the reply being filed during the term, and the alleged fact that the defendant had prepared for the trial 2. PRACTICE: on the issue presented by petition and answer, continuance. and was not prepared to try the issue presented by the reply, a continuance was asked. It does not appear the application was sworn to. The granting of a continuance, for the reason above stated, is clearly within the discretion of the court. Before we can interfere it must appear such discretion has been abused, and that substantial justice will be more nearly obtained by our so doing. Code, § 2749. There is nothing showing any such abuse. There is no showing other than a simple statement to the effect that defendant was not fully prepared to try the issue presented by the reply.

Counsel do not insist there was any abuse of discretion, or that the defendant was prejudiced by the overruling of the motion, but urge that the plaintiff was permitted to file and read affidavits in resistance of the motion, and that this constitutes prejudicial error. Whether the right exists to file affidavits in resistance of a motion for a continuance, which is within the discretion of the court, we do not determine. What we do hold is that if the motion was insufficient and the discretion of the court not abused that the filing and consideration of affidavits in resistance thereto does not constitute prejudicial error.

Afterward there was filed an amended motion for a continuance, based on the absence of the president and secretary of the company, and it was shown by affidavit that they were not present, nor had their depositions been taken, because their evidence was unnecessary, as the issue stood previous to filing the reply. The fact expected to be proved by said witnesses was that the only authority of Collins, the agent with whom insurance had been effected, "was to receive proposals for insurance, to fix the rates of premium, to receive moneys for the same, and to countersign, issue, renew, and consent to the transfer of policies of insurance, in accordance with the rules and instructions of said company; that said authority is in writing, in the form of a commission to said Collins as agent."

Upon the presentation of the motion to the court the plaintiff's counsel stated that no objection would be made to the introduction as evidence of said commission and instructions. Whereupon the motion was overruled. In this ruling there was no error. It was not claimed that the commission and instructions were not at hand, and in fact they were introduced on the trial.

The other matters stated in the motion were immaterial under the issue and the law of the case as we understand it to be.

III. It is said the proofs of loss were insufficient in two

particulars: *First*, that they were made before a notary public; and, *second*, they were not accompanied with the certificate, under seal of the nearest magistrate or notary public, as required by the terms of the policy.

*3. INSURANCE: certificate: nearest magistrate.*

The proofs were in due time forwarded to the company, or its authorized agents, and the only objection made thereto was the "absence of the whole value of the property at the time of the fire." This objection is not now insisted on, but that the "proofs were not under seal" is the objection relied on. Having made a specific objection, which has been cured, all others must be deemed to have been waived. *Ayres v. Hartford Ins. Co.*, 17 Iowa. 176; *Young v. Same*, 45 Iowa, 377.

The provision in the policy that the certificate therein required must be given by the nearest magistrate or notary public was, without serious doubt, inserted for the purpose of preventing the insured from selecting the officer to perform such duty. While this is so, the provision must have a reasonable instead of a literal construction. It does not, we think, require that the distance should be determined by the extension of a straight line, or that a surveyor should be called in and an exact measurement taken. *Turley v. North American Ins. Co.*, 25 Wend., 374. Nor is it required that the assured should cross lots. In the absence of bad faith on the part of the assured in selecting the officer nice distinctions as to the distance should not be indulged. A few feet more or less cannot be material.

Under this view the evidence fails to satisfy us the officer selected was not the nearest, as required by the terms of the policy, and the jury have found that he was.

IV. The plaintiff, when on the stand as a witness, gave her version of a conversation between herself, Collins, and Zollars, another agent of the company. When Collins was on the stand as a witness he was asked to state that conversation, and counsel stated that his object was to contradict or

impeach the plaintiff. An objection to the proposed evidence was sustained, and defendant excepted. Thereupon counsel for the defendant stated they proposed to prove by the witness that he said to the plaintiff in said conversation that "Roberts had procured the policy to be delivered   *   *   *   under the statement that the house was then occupied, and that plaintiff replied: 'Mr. Roberts never stated that, and he will so swear;' shaking her fist in witness' face and saying, 'You lie, you lie, you lie.'"

The plaintiff, when testifying, denied using such language. Whether she did or not had no tendency to prove any issue in the case, and was, therefore, immaterial. Being so, the proposed impeaching evidence was also immaterial. Beside this, Collins testified that Roberts did tell him the house was occupied, and Zollars testified to what the plaintiff did say in said conversation. Clearly, therefore, there was no prejudicial error in the ruling.

V. The plaintiff, against the objection of the defendant, was permitted to prove the location of the house. It was only partially consumed, and the appellee claims the evidence was admissible under a clause in the policy which limited the extent of the liability in case the value of the property had depreciated from use or otherwise.

How this is we are unable to determine, as only a portion of the policy is before us, and no such provision is found in such portion. But we must, in the absence of any showing to the contrary, presume there was some provision of the policy which would justify the admission of the evidence.

It is difficult to conceive how this evidence could have had the important bearing claimed by the appellant, or how it could have had a prejudicial effect on the jury.

VI. There was a demurrer to the reply, which was overruled. Such ruling is assigned as error. Whether this error was waived or not we do not determine— it not being material to do so, as the same question is presented on the instructions given the jury, among

4. ———: unoccupied building: estoppel.

which are the following asked by the plaintiff, and given as modified by the court:

"If you believe from the evidence that on October 18, 1876, the date of the policy, the plaintiff stated to the agent of defendant that the house in question was unoccupied, and that the said agent of said company signed the policy and accepted the premium therefor, well knowing that said house was unoccupied, then defendant cannot avoid said policy by showing that said house was unoccupied at the date of said insurance.

[By the Court: Without further showing that it was in fact to be occupied before the time it was destroyed or injured by fire.]

"2. If the agent of defendant at Keokuk was authorized by defendant to countersign and issue policies, to accept risks offered him and receive premiums therefor, and he insured said house knowing the same was unoccupied, then the said insurance company will be bound by his acts."

The evidence on the part of the plaintiff tended to prove that it was understood and agreed between the plaintiff and Collins, at the time the policy was written up and the premium paid, that the house was unoccupied, and that it might remain so for the period of thirty days; and the defendant's evidence tended to prove that the house was to be occupied by the 1st day of November.

The policy provides: "Or if the premises are, at the time of issuing or during the life of the policy, vacant, unoccupied and not in use, whether by removal of the owner or occupant, or for any cause, without this company's consent is indorsed herein, this insurance shall be void and of no effect. * * * The use of general terms, or anything less than a distinct specific agreement, clearly expressed, and indorsed on this policy, shall not be construed as a waiver of any printed restrictions therein, nor, in the event that this policy shall become void by reason of any of the conditions thereof, shall the agent

have power to revive the same, except by issuing a new policy; and any policy so made void shall remain void and of no effect until removed by the actual issue and delivery to the assured of the new policy—any contract by parol or understanding with the agent to the contrary notwithstanding."

The fire occurred on the 4th or 5th of November, which was within thirty days of the date of the policy, which, it is said, never existed as a legal and binding contract, because of the parol agreement made at the time it was written up as to the occupation of the building; the argument being, in brief, that a contract must be either wholly written or wholly in parol—that it cannot be a valid contract when partly written and partly in parol.

This case, therefore, it is said is distinguishable from *Viele v. Germania Ins. Co.*, 26 Iowa, 9, as in that case the contract at one time was valid and binding. The distinction we do not think well taken; but if so, such can hardly be said of the subsequent case of *Young v. Hartford Ins. Co.*, before cited. It must be regarded as settled law in this State that notice to an agent having the powers referred to in the second instruction is notice to the company. *Bartholomew v. Merchants' Ins. Co.*, 25 Iowa, 507; *Alman, Miller & Co. v. Phœnix Ins. Co.*, 27 Iowa, 203; *Miller v. Mutual Ins. Co.*, 31 Iowa, 216.

We have, then, this case: The company, with full knowledge the house was unoccupied, and would be for a time, issues the policy and receives the premium, and then, after a loss occurs, insists it is not bound, and the policy never had a legal existence because said house was vacant.

Having issued the policy, taken the premium, and thereby induced the plaintiff to believe she was insured, the defendant is estopped from alleging or proving the policy never had a legal existence. By issuing the policy the defendant waived the conditions as to the occupation of the building, and also that such waiver should be expressed on the policy

in writing. In addition to the cases heretofore cited see *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa, 253.

What has been said applies with full force to the error assigned as to the sixth instruction.

VII. The policy was not delivered at the time it was written up, and the evidence tended to show that the plaintiff directed one Roberts to go to Collins and get it for her, and that Roberts, at the time he got the policy, represented the house was occupied. The court instructed the jury that if "Roberts went to defendant's agent to get the policy, which had already been contracted for and paid for by plaintiff, and if he was only her messenger, authorized to get and bring to her said policy, then his acts and declarations as to any other matter cannot affect plaintiff's right to recover unless the defendant shows by the evidence that Roberts had authority or direction from plaintiff to act for her and represent her in the matters relied on by defendant to bind her."

The objection to this instruction is that it, in effect, takes from the jury the evidence given by defendant tending to show what Roberts said when he got the policy. We do not so understand it. All that it requires is that the authority of Roberts to bind the plaintiff by his acts and declarations should be in some manner made to appear to the satisfaction of the jury.

The authority of the supposed agent cannot be proved by his declarations. Something more than this is required.

VIII. It is conceded the fifth instruction, as to the weight to be given to verbal admissions, is in the exact language used in 1 Greenleaf on Evidence, § 200; but it is insisted that in this case, owing to peculiar circumstances, such an instruction is not applicable. We have carefully weighed all that has been said by counsel, and confess our inability to see wherein the instruction, as modified by the court, is not as fully applicable in this as any other case. We regard it as entirely unobjectionable.

Williams v. The Niagara Fire Ins. Co.

IX.  The seventh instruction is objected to because it "erroneously puts on defendant the burden of proof as to how long the house was to remain unoccupied."  We do not concur in this proposition.  The only contest in relation to the occupation of the house was whether it was to be occupied by the 1st day of November or within thirty days from the date of the policy.  The validity of the policy being determined, the burden was on the defendant to prove that it was to have been occupied by the 1st day of November.  If wrong in this, the fourth instruction given at the instance of the defendant, fairly and properly, when read in connection with the seventh instruction, placed the true question for determination before the jury.

*6. ——: parol condition; burden of proof.*

When the question of the validity of the policy is separated from the question as to when the house was to be occupied, it will be readily seen that the burden was on the defendant to by proof shorten the life of the policy.

X.  It is said there was no evidence on which the eighth instruction could properly be based; that the ninth is "verbose," and the tenth, eleventh and twelfth "single out evidence and give prominence to portions thereof, and importance to immaterial facts."  It is deemed unnecessary to set out these instructions, or to give at length the reasons upon which our conclusions are based.  We have carefully considered each objection, and examined the abstract and argument of counsel, and feel constrained to say that none of the objections are well taken.

The instructions asked by defendant and given in a modified form are, as they went to the jury, consistent with the other instructions which we have approved.  It follows, therefore, that there was no error in modifying them as was done.  The twelfth instruction asked by the defendant was properly refused, because it was in direct conflict with the other instructions given.

XI.  The court refused to permit the defendant to prove

by "experts the manner of adjustment of losses" by insur-
ance companies. This was clearly incompetent
evidence. The rights of the plaintiff were per-
fect or otherwise under the policy when the loss occurred. A
custom as to the manner of adjusting such loss could not
affect her unless she had knowledge thereof at the time the
policy was executed, or at least that such custom was so gen-
eral and well understood that it must have entered into and
formed a part of the contract.

*7. ——: expert evidence.*

It is lastly urged the court erred in overruling the motion
for a new trial; and, as we understand the point made, it is
that the evidence is not sufficient to warrant the verdict.
Under the settled practice of this court we cannot interfere
with the verdict on this ground.

AFFIRMED.